```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

AFSHIN NOROOZI and JOHN ASSADI,               :

                          Plaintiffs,         :         11 Civ. 8333 (PAE)

             -v-                              :         OPINION & ORDER

JANET NAPOLITANO, et al.,                     :

                          Defendants.         :
------------------------------------------------------------------------ X
```

PAUL A. ENGELMAYER, District Judge:

Plaintiffs Afshin Noroozi and John Assadi (together, "Noroozi") bring this declaratory judgment action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq*, challenging the decision of the United States Citizenship and Immigration Services ("USCIS" or "CIS") to deny Noroozi an EB-1 "extraordinary ability" visa. The defendants, all of whom are federal government officials ("the Government"), now move for summary judgment. For the reasons below, the Court grants that motion.

I.  **Background**[1]

   **A.  The Parties**

Noroozi is an Iranian table-tennis player. Compl. ¶ 4. Assadi is an immigration attorney who specializes in employment-based immigration visas and who represented Noroozi in petitioning CIS, in February 2010 and June 2011, for an extraordinary ability visa. *Id.* ¶ 5.

---

[1] The Court's account of the underlying facts of this case is drawn from the parties' pleadings and their submissions in support of and in opposition to the instant motion. Specifically, the Court cites to the Declaration of Patricia L. Buchanan ("Buchanan Decl.") (Dkt. 11) and the Declaration of Rakhel Speyer Milstein ("Milstein Decl.") (Dkt. 14) and attached exhibits, including Exhibit F of Buchanan's Declaration—the administrative record from CIS ("AR").

The defendants to this action are federal officials sued in their official capacities. They are: Janet Napolitano, Secretary of the Department of Homeland Security; Eric Holder, Attorney General of the United States; Preet Bharara, United States Attorney for the Southern District of New York; Alejandro Mayorkas, Director of CIS; and David Roark, Director of the CIS Texas Service Center.

### B. The "Extraordinary Ability" Visa

In the Immigration Act of 1990, Pub. L. 101-649 (1990), Congress created five "preference" categories for employment-based visas. *See* 8 U.S.C. § 1153(b). An alien qualifying for a "first preference" visa need not have an offer of employment. 8 C.F.R. § 204.5(h)(5) ("Neither an offer for employment in the United States nor a labor certification [from the Department of Labor] is required for this classification.").

One type of first preference visa is for aliens of "extraordinary ability." An alien, or a person on his or her behalf, may petition CIS to grant an immigration visa on this basis. § 204.5(h)(1). An alien seeking to obtain a visa based on extraordinary ability bears the burden of demonstrating three criteria:

> (i) the alien has extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation;
>
> (ii) the alien seeks to enter the United States to continue work in the area of extraordinary ability; and
>
> (iii) the alien's entry into the United States will substantially benefit prospectively the United States.

8 U.S.C. § 1153(b)(1)(A)(i)–(iii).

As to the requirement of "sustained national or international acclaim," under CIS's regulations, a petitioner may demonstrate such acclaim in one of two ways. First, an alien may

2

provide "evidence of a one-time achievement (that is, a major, international [sic] recognized award)." 8 C.F.R. § 204.5(h)(3); *see also Kazarian v. U.S. Citizenship and Immigration Servs.*, 596 F.3d 1115, 1119 (9th Cir. 2010) ("Receipt of the Nobel Prize is the quintessential example of a major award."). Alternatively, an alien may satisfy at least three of the following 10 criteria:

> (i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;
>
> (ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;
>
> (iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;
>
> (iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;
>
> (v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;
>
> (vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;
>
> (vii) Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;
>
> (viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;
>
> (ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or
>
> (x) Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

8 C.F.R. § 204.5(h)(3)(i)–(x).

To satisfy the burden of demonstrating "extraordinary ability," the petitioner must also show "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." § 204.5(h)(2).

**C. Noroozi's First Petition**

On February 11, 2010, Assadi filed an extraordinary ability visa petition with CIS on Noroozi's behalf. The petition asserted that Noroozi was a person of extraordinary ability in the field of athletics—namely, table tennis. Compl. ¶ 11; AR 00311.

In attempting to establish the requirement of "sustained national or international acclaim," Assadi's February 2010 petition argued that Noroozi met four of the 10 criteria in § 204.5(h)(3).[2] Specifically, Noroozi put forward what he claimed was satisfactory evidence of "nationally or internationally recognized prizes or awards" (§ 204.5(h)(3)(i)); "membership in associations" (§ 204.5(h)(3)(ii)); "published material" (§ 204.5(h)(3)(iii)); and a "leading or critical role" (§ 204.5(h)(3)(viii)). Compl. ¶¶ 13–17; AR 00315–19.

On May 6, 2010, CIS wrote Noroozi, seeking additional evidence. Compl. ¶ 19; AR 00383–84. On June 2, 2012, Assadi responded, providing additional information. Compl. ¶ 20; AR 00388.

On June 9, 2010, CIS approved Noroozi's EB-1 petition. The notice of approval did not contain any written analysis or explanation—it merely indicated that the petition had been approved. Compl. ¶ 20; AR 00032. As a result, as counsel for the Government acknowledged at argument, the administrative record does not reveal which of the § 204.5(h)(3) criteria the CIS

---

[2] Noroozi concedes that he does not satisfy the "one-time achievement" element—the alternative showing a petitioner may make to demonstrate "sustained national or international acclaim."

4

reviewing officer initially determined that Noroozi had satisfied.  *See* Transcript of Oral Argument ("Tr.") (Dkt. 19) at 3–5.

In June 2010, after Noroozi's petition had been approved, his case was referred to CIS's Texas Service Center's Fraud Detection Operations unit ("CFDO").  The administrative record reflects that the referral was made because "[t]he attorney of record[,] John Assadi[,] has recently had an abundance of E-11 Aliens of Extraordinary Ability filings from Iran.  Some of these filings have appeared to have boilerplate documents and therefore, Exams is referring these cases to CFDO for review."  AR 00542.  Notwithstanding the referral, on June 28, 2010, CFDO determined that there was "no evidence of fraud with [Noroozi's] petition."  It recommended that the petition "be judged on its own merits."  *Id.* at 00541.

### D.  *Kazarian* and the Revocation of Noroozi's Visa

In March 2010, while Noroozi's first petition was pending, the United States Court of Appeals for the Ninth Circuit decided *Kazarian v. United States Citizenship and Immigration Services*, 596 F.3d 1115 (9th Cir. 2010), involving a challenge to a denial by CIS of an extraordinary ability petition.  As relevant here, *Kazarian* held that CIS's process for adjudicating extraordinarily ability visas was procedurally flawed.[3]  As the Ninth Circuit explained, CIS's process for reviewing these applications impermissibly enabled its reviewers to weigh the overall *credibility* of a petitioner's evidence at the same time they determined whether the petitioner had satisfied three of the § 204.5(h)(3) criteria.  *Kazarian*, 596 F.3d at 1121.  This one-step, or collapsed, approach was flawed, because the strength of a petitioner's evidence is

---

[3] Although the *Kazarian* panel found the CIS process to be flawed, it affirmed CIS's denial of Kazarian's visa petition, holding that CIS's error was harmless.  *Kazarian*, 596 F.3d at 1122.

5

"not relevant to the antecedent procedural question of whether the petitioner has provided at least three types of evidence [to satisfy the § 204.5(h)(3) criteria]." *Id.*

On August 18, 2010, consistent with *Kazarian*, and "[i]n order to promote consistency in decision-making," CIS issued an interim policy memorandum. The memorandum put in place a new, two-step approach to the adjudicative process for extraordinary ability petitions. *See* Buchanan Decl. Ex. A. According to the two-step, or *Kazarian*, approach, "[t]he [reviewer] must first evaluate all the evidence on an individual basis to determine if it meets the [section 204.5(h)(3)] criteria, and then must consider all of the evidence in totality[,] making the final merits determination." *Id.* at 3. Under this approach, a reviewing officer may determine that a petitioner has satisfied three of the 204.5(h)(3) criteria, yet may nonetheless determine that the petitioner failed the final merits determination and thus does not qualify.[4]

In late August 2010, after implementation of the *Kazarian* two-step approach, CIS sent Noroozi a Notice of Intent to Revoke his visa ("the Notice" or "NOIR"). *See* AR 00543–49. The Notice did not mention the newly-implemented *Kazarian* framework, but it stated that Noroozi failed to satisfy *any* of the 10 criteria set forth in § 204.5(h)(3). *Id.* CIS also stated that Noroozi had failed to establish that he "seeks to enter the United States to continue work in the area of extraordinary ability, and that his entry into the United States would substantially benefit prospectively the United States." *Id.* at 00548 (citing 8 U.S.C. § 1153(b)(1)(A)(ii)–(iii)).

---

[4] According to the August 18, 2010, policy memo, the final merits portion of the analysis requires that the petitioner demonstrate that he has attained *both* "[a] level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor," *and* "[s]ustained national or international acclaim." *See* Buchanan Decl. Ex. A at 10–11 (quoting 8 C.F.R. § 204.5(h)(2)–(3)).

In response to the Notice, Noroozi submitted additional evidence in support of his petition. *See* AR 00558.[5] However, on March 7, 2011, CIS revoked Noroozi's visa. *See id.* at 00614–23. CIS explained the revocation in light of the *Kazarian* analytic framework and stated that, "[a]fter consideration, and upon review of all of the evidence submitted . . . USCIS has determined that the . . . petition should not have been approved." *Id.* at 00615. Specifically, CIS's revocation stated that Noroozi had satisfied only one of the 10 criteria under § 204.5(h)(3)—"lesser nationally or internationally recognized prizes or awards"—and that he had also failed the final merits determination. *Id.* at 00617–22. CIS also stated that Noroozi had failed to establish that he would continue working as a professional table tennis player and that granting the visa would "substantially benefit prospectively the United States," as required by statute. *Id.* at 00622–23.

### E. Noroozi's Second Petition

On June 20, 2011, Assadi filed a second E-11 extraordinary ability visa petition on behalf of Noroozi (the "second petition"). That petition is the one at issue in this case. *See* AR 00002. The second petition, utilizing the *Kazarian* framework, argued that Noroozi met four of the § 205.4(h)(3) criteria. *Id.* at 00015–24. It also asserted that Noroozi would continue his work as a professional table tennis player and that his presence "will substantially benefit the United States' table tennis community." *Id.* at 000026.

On June 30, 2011, CIS sent a Request for Evidence to Assadi. It stated that Noroozi had satisfied the prizes or awards criterion, but that his submission did not satisfy the other three criteria. *See id.* at 000268–73. Assadi submitted a timely response to the request. *Id.* at 000274.

---

[5] In the interim, on December 22, 2010, after a comment period, CIS issued a final policy memo addressing the *Kazarian* framework and giving guidance to officials reviewing petitions for extraordinary ability visas. *See* Buchanan Decl. Ex. D. This memo is codified at Chapter 22.2 of the CIS *Adjudicator's Field Manual*.

7

On August 4, 2011, CIS denied the petition. *See id.* at 000293–99. It stated that Noroozi had satisfied two of the § 204.5(h)(3) criteria, for "lesser nationally or internationally recognized prizes or awards," 8 C.F.R. § 204.5(h)(3)(i), and "membership in associations," § 204.5(h)(3)(ii), but that the evidence he had submitted did not establish either that (1) he had played a leading or critical role, or (2) there had been published material about Noroozi in "professional or major trade publications or other major media." *Id.* at 00295–98. CIS also stated that Noroozi failed its final merits determination and that Noroozi had not shown how he would substantially benefit prospectively the United States. *Id.* at 00298–99.

### F.  The Present Lawsuit

On November 17, 2011, Noroozi brought this lawsuit, seeking declaratory relief and an order directing the defendants to readjudicate favorably the visa petition. Compl. 9. On May 25, 2012, the Government moved for summary judgment based on the administrative record. Dkt. 10–12. On June 29, 2012, Noroozi filed a brief in opposition. Dkt. 13–15. On July 20, 2012, the Government submitted its reply brief. Dkt. 17. On September 19, 2012, the Court heard argument on the Government's motion.

## II.     Legal Standard

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008). To survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing

to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

Where, as here, a party seeks review of agency action under the APA and "the entire case on review is a question of law," summary judgment is generally appropriate. *See Citizens Against Casino Gambling v. Hogen*, No. 07-CV-0451S, 2008 WL 2746566, at *25 (W.D.N.Y. July 8, 2008) (quoting *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)). More specifically, "[t]he question whether an agency's decision is arbitrary and capricious . . . is a legal issue" amenable to summary disposition. *Id.* (quoting *Connecticut v. United States Dep't of Comm.*, No. 3:04cv1271 (SRU), 2007 WL 2349894 at *1 (D. Conn. Aug. 15, 2007)); *see also Univ. Med. Ctr. v. Shalala*, 173 F.3d 438, 440 n.3 (D.C. Cir. 1999) ("[T]he question whether [an agency] acted in an arbitrary and capricious manner is a legal one which the district court can resolve on the agency record—regardless of whether it is presented in the context of a motion for judgment on the pleadings or in a motion for summary judgment (or in any other Rule 12 motion under the Federal Rules of Civil Procedure).").

Under the APA, federal courts have jurisdiction to review "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. However, courts review agency actions under a deferential standard, under which such actions may only be disturbed if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence." § 706(2)(A), (E). An agency abuses its discretion when

it fails to present a rational explanation for its decision or if the decision is devoid of any reasoning.  *See Sinistovic v. Holder*, 429 F. App'x 37, 39 (2d Cir. 2011) (summary order) (citing *Ke Zhen Zhao v. U.S. Dep't of Justice*, 265 F.3d 83, 93 (2d Cir. 2001)).  A decision is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also Natural Res. Def. Council v. U.S. EPA*, 658 F.3d 200, 215 (2d Cir. 2011) (same).  The Court's task is not to "engage in an independent evaluation of the cold record," *Guan v. Gonzalez*, 432 F.3d 391, 394–95 (2d Cir. 2005), nor to "substitute its judgment for that of the agency," *Natural Res. Def. Council*, 658 F.3d at 215 (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)).  Instead, it is for the Court to determine whether the agency has "considered the pertinent evidence, examined the relevant factors, and articulated a satisfactory explanation for its action."  *J. Andrew Lange, Inc. v. FAA*, 208 F.3d 389, 391 (2d Cir. 2000); *see also 41 N. 73 W., Inc. v. U.S. Dep't of Transp.*, 408 F. App'x 393, 399 (2d Cir. 2010) (summary order).  Additionally, courts "will not disturb a factual finding if it is supported by reasonable, substantial, and probative evidence in the record when considered as a whole."  *Quan Mei Chan v. Dep't of Homeland Sec.*, 251 F. App'x 18, 20 (2d Cir. 2007) (quoting *Wu Biao Chen v. INS*, 344 F.3d 272, 275 (2d Cir. 2003)).

### III.   Discussion

Noroozi makes three arguments as to why CIS's actions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  *Natural Res. Def. Council v.*

*U.S. Dep't. of Agric.*, 613 F.3d 76, 83 (2d Cir. 2010) (quoting 5 U.S.C. § 706(2)(A), (C), & (D)). First, Noroozi argues that CIS failed to adequately explain its departure from its earlier determination that Noroozi merited an extraordinary ability visa. Pl. Br. 13–15. Second, he argues that "no rational adjudicator" could have found that he did not satisfy the eligibility criteria. *Id.* at 15. Finally, he argues that CIS relied on factors that are wholly irrelevant to the merits of his petition. *Id.* at 10–13. The Court addresses each of these arguments in turn.

### A. Noroozi's Claim that CIS Failed to Explain Its Change of Position

This Court recently held that where CIS reverses course and denies a visa to an applicant based on the same factual record on which it had previously granted a visa, the agency has a burden to justify its change of position. *See Glara Fashion, Inc. v. Holder*, No. 11 Civ. 889 (PAE), 2012 WL 352309, at *7 (S.D.N.Y. Feb. 3, 2012). Here, Noroozi's 2010 and 2011 visa petitions presented substantially the same evidence in support of his claim of extraordinary ability. Based on *Glara Fashion*, Noroozi argues that CIS cannot "adequately explain" its change of position. Pl. Br. 15.

The Government, for its part, argues that the *Glara Fashion* principle does not apply here for two reasons. First, the Government notes that CIS's decision to revoke the visa initially granted to Noroozi is immune from judicial review. And, it argues, were the Court to consider the recent denial of Noroozi's petition against the 2010 decision to approve his first petition, "this Court would be, in effect, reviewing whether CIS's revocation was correct." Def. Br. 15, 17. Second, the Government argues *Glara Fashion* is distinguishable because (1) the petition at issue was an H1-B visa, not an extraordinary ability visa, and (2) that case arose on a decision not to renew a visa, not a decision not to grant one. *Id.* at 16–17.

In the Court's assessment, there is no need to resolve the legal question of whether CIS has a duty in this case to "adequately explain[] its departure from its prior course of action," *Glara Fashion*, 2012 WL 352309 at *7, because, on the record at hand, CIS has satisfactorily done so. As the Court noted in *Glara Fashion*, under a long line of cases, an agency is "not bound to follow an earlier determination as to a visa applicant where that initial determination was based on a misapplication of the law." *Id.* (citing *Royal Siam Corp. v. Chertoff*, 484 F.3d 139, 148 (1st Cir. 2007)). Otherwise, "an agency would be condemned indefinitely to err anew each time the decision in question . . . came up for renewal." *Id.* Here, CIS has supplied an amply reasonable justification for its decision to reject Noroozi's second petition. It explains that its initial decision to grant Noroozi's petition was the product of a reviewing methodology that did not comport with the Ninth Circuit's decision in *Kazarian* or the two-step evaluation process that CIS put in place to implement the analysis in *Kazarian*.

To recap, after Noroozi's first petition was approved, it was subsequently referred to CFDO for investigation based on the fraud allegations that had been made against Assadi, the petitioner.[6] *See* AR 00541. Once CFDO had determined that there had not been any fraud, it returned Noroozi's petition with the recommendation that it be "judged on its own merits." *Id.* On its further review, CIS determined that Noroozi had not satisfied the § 204.5(h)(3) criteria and issued a Notice of Intent to Revoke ("NOIR") which detailed the deficiencies in Noroozi's petition. *Id.* at 000034. Significantly, prior to issuing the NOIR, CIS had implemented the new, two-step *Kazarian* framework for adjudication. On March 7, 2011, CIS revoked Noroozi's visa, concluding that the initial petition "should not have been approved." *Id.* at 00614.

---

[6] At oral argument, Assadi, still representing Noroozi, conceded that it was reasonable for CIS to review Noroozi's petition, given the fraud allegations. Tr. 27. The Court agrees.

12

Viewed in that context, CIS's decision to reject Noroozi's second petition for a visa (made in June 2011) does not raise concerns about agency arbitrariness. Rather, the agency's change of course is amply explained. The agency had put in place a new reviewing methodology, following *Kazarian*, and applied that methodology both in revoking the initial visa and in rejecting Noroozi's second application, which was based on similar evidence and arguments. Further, as the Court explains below, CIS's analysis under the governing regulations was detailed and well-reasoned.[7] Thus, even if a duty to explain an agency's change of course applied in this context, CIS has comfortably discharged that duty here. Therefore, this Court finds that even if *Glara Fashion* were to apply, CIS has met any burden of explanation imposed upon it.

### B. Noroozi's Claim that CIS's Denial Was an Abuse of Discretion

In denying Noroozi's second petition, CIS determined that Noroozi met two of the § 204.5(h)(3) criteria, but not three, as required. Specifically, CIS rejected Noroozi's claims that (1) he "performed in a leading or critical role for organizations or establishments that have a distinguished reputation," 8 C.F.R. § 204.5(h)(3)(viii), and (2) that there was "[p]ublished material about [Noroozi] in professional or major trade publications or other major media, relating to [his] work." § 204.5(h)(3)(iii). Additionally, CIS also found that Noroozi's evidence, viewed in totality, did not warrant granting his petition. Noroozi argues that those determinations were arbitrary and capricious, and an abuse of discretion, and that "no rational adjudicator could have determined that Noroozi did not qualify as an alien of 'Extraordinary

---

[7] Notably, the agency's initial decision to grant Noroozi's first petition was devoid of any explanation. The reviewing officer did not indicate how many, or which, of the § 204.5(h)(3) criteria Noroozi had satisfied, let alone the basis on which the reviewer found he had satisfied them.

Ability' according to the regulatory criteria and *Kazarian* method of analysis." Pl. Br. 15.  The Court addresses each of these points below.[8]

### 1. Critical Role

In challenging CIS's determination that he did not adduce evidence sufficient to show that he performed "in a leading or critical role for organizations or establishments that have a distinguished reputation," Noroozi argues that CIS (1) considered the wrong evidence, and (2) gave "an explanation for its decision that ran counter to the evidence before it."  Pl. Br. 16–17.

As to the first point, Noroozi argues that in its Letter of Denial, *see* AR 000293, 296, CIS considered a letter that had been submitted in support of his first, rather than his second, petition.  On this basis, Noroozi argues, CIS's decision must be found to have been arbitrary and capricious.  Noroozi's argument is factually inaccurate.  As the Government explains in its reply brief, the language cited in the Letter of Denial was taken directly from a letter signed by Mohammad Zarepour Ashkzari, Acting President of the Table Tennis Federation of the Islamic Republic of Iran, submitted on June 16, 2011, along with Noroozi's second petition.[9]  *See id.* at 000030 (exhibit list), 000217–18 (exhibit attached to Noroozi's second petition).  That, in its Letter of Denial, CIS did not cite from each and every letter in support of Noroozi's petition does

---

[8] Noroozi also disputes CIS's alternative basis for denying the petition:  that Noroozi failed to establish that he was "coming to the United States to continue work in [his] area of expertise."  8 C.F.R. § 204.5(h)(5).  Because the Court finds that CIS validly found that Noroozi did not satisfy three of the § 204.5(h)(3) criteria, and that, viewing the evidence in totality, he does not warrant a favorable final merits determination, it has no occasion to reach this question.

[9] Noroozi concluded that CIS must have been quoting a letter from Shahrokh Shahnazi, Deputy President of the Asian Table Tennis Union and member of the Board of Directors of the International Table Tennis Federation, Pl. Br. 16, whereas it should have instead considered a letter from Abbas Saiedi, General Secretary of the Table Tennis Federation of the Islamic Republic of Iran, which was submitted in response to a CIS Request for Evidence in support of the second petition.  *Id.*  Noroozi's mistake as to which letter was quoted is understandable, as the letters from Ashkzari, Saiedi, and Shahnazi are virtually identical.  *Compare* AR 000217, *with* AR 000288, *and* AR 00437.

not make its decision arbitrary or capricious.  *See Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 338 n.17 (2d Cir. 2006).  The administrative record does not supply any basis to conclude that CIS considered "the wrong evidence."

Noroozi's second argument challenges CIS's determination on the merits.  He argues that, because he was the only member of the Iranian Olympic Table Tennis Team in the 2008 Beijing Olympics, this fact in and of itself establishes that he played a "leading or critical role." Pl. Br. 17.  According to the CIS Adjudicator's Field Manual, for a role to be considered "leading," "the evidence must establish that the alien is (or was) a leader."  Buchanan Decl. Ex. D at 10.  As for a "critical role," it is one in which the "alien has contributed in a way that is of significant importance to the outcome of the organization or establishment's activities." *Id*.  In addition, the alien's leading or critical role must have been performed for an organization with a distinguished reputation.  8 C.F.R. § 204.5(h)(3)(viii); Buchanan Decl. Ex. D, at 10.

Here, Noroozi submitted letters from both the General Secretary and Acting President of the Table Tennis Federation of the Islamic Republic of Iran.  On review of these letters, CIS determined, however, that these letters do "not give specifics on how the beneficiary's role was critical to the organization," and that the letters "do not establish that the role of the beneficiary was leading or critical as a whole."  AR 000297–98.  Having reviewed these letters, and giving due deference to CIS, the Court cannot find CIS's judgment to have been in error, let alone arbitrary, capricious, or an abuse of discretion.  These letters, while descriptive of a highly selective process to achieve membership on the Iranian national table tennis team, simply do not describe, in any detail, how Noroozi performed in a "leading or critical role."  *See* AR 000287–88 (stating that, "[t]he Olympic Team was officially selected through a long tournament process whereby the best table tennis players in the nation competed against each other, and the final

15

winner, Mr. Noroozi, was given the nation's only spot after being victorious in previous competition."). Noroozi's argument is, in essence, that merely because an individual is the *only* member of a team, he plays a de facto leading or critical role on it. But CIS could reasonably conclude that to play a critical or leading role on a *team* presupposes making leadership contributions in relation to one's *teammates*—of which Noroozi had none. Accordingly, CIS was "within its rights to discount as conclusory and/or insubstantial the evidence proffered . . . and to insist on a more substantial showing" that Noroozi played a leading or critical role. *Glara Fashion*, 2012 WL 352309 at *9. Thus, the Court concludes that CIS's determination as to this criterion was based on substantial evidence, and was well within its discretion.

### 2. Published Material

Although Noroozi does not raise this issue in his submissions to the Court, in his petitions Noroozi argued that he also satisfied the "published material" criterion. AR 00314, 000015. CIS rejected that claim. The Court considers that issue because, if Noroozi did satisfy this criterion, he would satisfy the elusive third § 204.5(h)(3) criteria.

According to the CIS Adjudicator's Field Manual, "[t]he published material should be about the alien relating to his or her work in the field, *not just about his or her employer* or another organization that he or she is associated with." Buchanan Decl. Ex. D at 7 (emphasis added). Additionally, the evidence must "establish that the circulation [of the publication] . . . is high compared to other circulation statistics." *Id*. In attempting to meet this criterion, Noroozi submitted a variety of news articles. However, the Court's review of these articles confirms CIS's assessment that "[m]any of the articles submitted are about the Iranian Table Tennis Team and briefly mention the beneficiary." AR 000296; *see, e.g.*, AR 000221 ("Afshin Norouzi and Mohammad-Reza Akhlaq-Passand are accompanying the team."); AR 000224 (reporting that

16

"Iran's Alamian wins table tennis gold," and noting, in passing, that the headline athlete had previously "won the silver medal in the men's doubles along with his teammate Afshin Norouzi"). In addition to this shortcoming, Noroozi did nothing to establish that the publications in which these articles appeared had the requisite level of circulation to qualify as either "a major trade publication or major media publication." 8 C.F.R. § 204.5(h)(3)(iii). Accordingly, CIS's judgment that Noroozi did not satisfy this criterion had a basis in evidence and was well within its discretion.

### 3. Final Merits Determination

Noroozi also contends that CIS erred in concluding, on the totality of the evidence, that he did not merit a favorable judgment at the final merits stage of the *Kazarian* analysis. Pl. Br. 21. This, Noroozi argues, was an abuse of discretion. *Id*.

In the finals merits stage, adjudicators consider the totality of the evidence to determine whether the petitioner has, by a preponderance of the evidence, established that he: (a) "[i]s one of that small percentage who have risen to the top of their field of endeavor;" and (b) "[h]as sustained national or international acclaim and that the beneficiary's achievements have been recognized in their field of expertise." AR 000298.

The Court has no difficulty holding that CIS's determination as to this point was justified and reasonable. As CIS noted, Noroozi ranks 284th in the world in table tennis, placing him in the 17th percentile of ranked players, and finished in 65th place in the 2008 Olympic table-tennis competition. Although such proficiency is impressive and commendable, and surely bespeaks years of dedication and practice, CIS was well within its discretion to conclude that Noroozi's standing fell short of making him "one of that small percentage who have risen to the very top of the field of endeavor." § 204.5(h)(2).

Noroozi blames CIS for failing to "proffer a set of rankings, or even a hypothetical percentage of table tennis players worldwide." Pl. Br. 21.  Such a standard is unnecessary.  CIS was within its discretion to conclude that Noroozi's standing, on its face, did not satisfy the standard set forth in its regulations.  At argument, Noroozi acknowledged that a finding in his favor on this point would effectively oblige CIS to find that the 283 higher-ranked table tennis players in the world (to the extent they are not American citizens) would also satisfy the standards for an extraordinary ability visa if their accomplishments were "sustained."  Tr. 29. And because table tennis is but one of hundreds, if not thousands, of fields of game or sport, Noroozi's argument would appear to oblige CIS to grant extraordinary ability visas to at least the top 284 performers (to the extent they are not American citizens) in each of these many fields of endeavor.  It would also appear to require CIS—absent other disqualifying characteristics—to grant visas to all non-citizens among the 64 table tennis players who out-performed Noroozi in the 2008 Olympics.  The Court is unprepared to conclude that CIS abused its discretion, or otherwise erred, in requiring more elite standing before a petitioner can be deemed to be at "the very top of the field of endeavor."  As CIS noted, Congress intended to "set a very high standard for individuals seeking immigrant visas in the extraordinary ability classifications."  AR 000294 (citing 56 Fed. Reg. 60897, 69898–99 (Nov. 29, 1991)).  The Court finds that CIS did not abuse its discretion in finding against Noroozi on this ground.

### C.  Noroozi's Claim of Bad Faith

In an alternative argument, Noroozi contends that summary judgment is inappropriate because CIS may have denied the second petition "based on a consideration of an irrelevant factor"—Noroozi's association with Assadi.  Pl. Br. 11.  Noroozi also surmises that he, and other

Iranian clients of Assadi, may have been discriminated against on account of their national origin. *Id*. at 12.

As to Noroozi's first basis for claiming bad faith because of his association with Assadi, he relies upon a cable issued from the National Visa Center's Fraud Prevention Unit to the U.S. Embassy in Ankara, Turkey. The cable notified State Department officials that Assadi was suspected of "recruiting applicants who, although may be qualified, in some cases have no personal intentions or plans to use their extraordinary ability to benefit US society as required by law." Compl. Ex. K. The cable is not part of the administrative record in this case.

In general, "a court reviewing an agency decision is confined to the administrative record compiled by that agency when it made the decision." *Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d. Cir. 1997) (citing *Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 743–44 (1985)). However, "an extra-record investigation by the reviewing court may be appropriate when there has been a strong showing in support of a claim of bad faith or improper behavior on the part of agency decisionmakers or where the absence of formal administrative findings makes such investigation necessary in order to determine the reasons for the agency's choice." *Id*. Here, the cable on which Noroozi relies is insufficient to give rise to a strong showing that CIS denied his petition in bad faith for several important reasons. First, the cable does not refer to Noroozi. Second, the administrative record reflects that after CFDO reviewed Noroozi's first petition for potential fraud, it found no fraud and directed that Noroozi's petition be evaluated on its own merits. AR 00541. Third, in denying Noroozi's second petition, CIS offered a detailed and well-reasoned explication as to why it was denied. *Id.* at 000293. Fourth, on the Court's independent review, that assessment was amply justified. Noroozi's bare claim that he was denied a visa as a result of "guilt by association," without more, falls far short of a "strong showing" of bad faith.

Similarly deficient is Noroozi's second argument, that CIS discriminated against Iranian applicants. Pl. Br. 11–12. A bald claim of such discrimination—devoid of any credible evidence—cannot support a "strong showing" of bad faith. CIS's denial and/or revocation of other visa petitions is not before this Court, and the Court has no basis to infer bad faith or discriminatory conduct by CIS.

## CONCLUSION

For the foregoing reasons, defendants' motion is granted. The Clerk of Court is directed to terminate the motion at docket number 10, to enter judgment in favor of defendants, and to terminate this case.

SO ORDERED.

_Paul A. Engelmayer_
Paul A. Engelmayer
United States District Judge

Dated: November 14, 2012
New York, New York